DeMOSS, Circuit Judge,
specially concurring:
I join the majority opinion in full because, under the current state of our law, the panel is correct in its legal judgments with respect to jurisdiction and liability. However, I 'once again feel compelled to write separately to express my disapproval of and disappointment with the actions of the City of Garland police department.
We decide this case less than two months after a separate panel on which I sat issued similar opinions in the equally tragic case of Rockwell v. Brown, 664 F.3d 985 (5th Cir. Dec.15, 2011) (DeMoss, J., specially concurring). In Rockwell, six City of Garland police officers responded to a domestic disturbance where Scott Rockwell, a diagnosed bipolar schizophrenic who had previously attempted suicide, was ranting and raving alone in his room. Id. He had threatened—but not
harmed—his parents earlier that night, and was barricaded in his room when the officers arrived. Id. Yet in less than 30 minutes the officers armed themselves, ignored the parents’ request to give Scott time to calm down, broke down his bedroom door, provoked a knife attack, and shot him four times. Id. It was the officers’ job to prevent violence or suicide, yet they quickly escalated the situation to the point where they were legally justified to use deadly force against a mentally ill person who obviously needed help. Id.
Sadly, Ruddy Elizondo’s case is very similar to Rockwell. I firmly believe that Officer Green “should have been trained to use better judgment in [his] approach to volatile and unfortunate situations such as this one.” Id. Officer Green was a very large man highly trained in self defense and armed with a night stick, taser, and firearm, while Ruddy was a short and obese teenager who was distraught, intoxicated, and contemplating suicide with a relatively small knife. Moreover, Officer Green had only been on the scene for a few seconds, backup was on the way, and emergency medical personnel was waiting outside when the shooting occurred. Deadly force should have been Officer Green’s very last resort rather than his first reaction.
Presumably Officer Green followed standard police protocol for domestic disturbances where a knife is involved, so I focus my criticism specifically at the City of Garland police department’s training and tactical response programs. There must be effective ways for police officers to resolve volatile situations that avoid threatening or using deadly force.[1] Forcing Ruddy’s bedroom door open, yelling orders at him, and immediately drawing a firearm and threatening to shoot was a very poor way to confront the drunk, distraught teenager who was contemplating suicide with a knife.
Either law enforcement procedures or our law must evolve if we are to ensure that more avoidable deaths do not occur at the hands of those called to “protect and serve.” Saving lives remains job number *512 one for every law enforcement agency, and it is imperative that they have better procedures in place to deal with those persons who are young, intoxicated, mentally ill, or otherwise likely to react poorly in already volatile situations. I firmly believe that the light of public concern must be shined on tragic cases such as Scott Rockwell’s and Ruddy Elizondo’s if more deaths are to be prevented. Hopefully publication of this opinion will help to compel the City of Garland police department—and all law enforcement agencies—to re-evaluate their training and response procedures so that the use of deadly force remains the last resort in every situation.

. In Rockwell I suggested several options including those less-than-lethal tactics currently used in prisons and with wild animals. In Ruddy's case it seems that trying to defuse the situation by talking calmly, clearing the house, and waiting for backup may have been even more effective, especially since there is no indication that Ruddy had committed a crime or was threatening violence to others such that he needed to be taken into custody immediately.